**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

NEW CENTURY FINANCIAL, INC.,          §
                                      §
        Plaintiff,                    §
                                      §
vs.                                   §          C.A. NO. C-04-437
                                      §
NEW CENTURY FINANCIAL                 §
CORPORATION, et al,                   §
                                      §
        Defendants.                   §

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On this day came on to be considered Defendants' Motion for
Summary Judgment in the above-styled action.   In this motion,
Defendants seek judgment on Plaintiff's claims for federal and
state trademark infringement as well as Plaintiff's claims for
unfair competition under state law.   On May 6, 2005, Defendants
submitted their motion to the Honorable Magistrate Judge Brian
Owsley for consideration.   On July 12, 2005, the Magistrate Judge
issued a Memorandum and Report recommending that the Motion for
Summary Judgment be granted.   On July 26, 2005, the Plaintiff filed
objections to the Magistrate Judge's report with this Court.   After
Defendants responded to Plaintiff's objections on August 4, 2005,
this Court took the matter under consideration.   Because there is
a genuine issue of material fact with respect to the "likelihood of
confusion" between the Plaintiff's and Defendants' marks, this
Court must disagree with the Magistrate Judge's recommendation.
This Court, therefore, DECLINES TO ADOPT the Magistrate's
Recommendations, and Defendants' Motion for Summary Judgment must

likewise be DENIED.

## I.    Factual Background

The factual background in this case is sufficiently stated in the Magistrate's Memorandum and Report. There is no need to engage in a superfluous recitation of the facts here. Most of Plaintiff's objections to factual statements in the Magistrate's report are, on the whole, either without merit or irrelevant. This Court's concern is not necessarily with the characterization of the facts, but rather with the application of the summary judgment and likelihood of confusion standards to those facts.

## II.   Discussion

The crucial issue in this case is whether there is a "likelihood of confusion" between Plaintiff's "New Century Financial" trademark and Defendants' "New Century Financial Corporation" and "New Century Mortgage" trademarks and names. As the Magistrate Judge correctly pointed out, all of Plaintiff's claims, both federal and state, turn on this same question. See, e.g., Blue Bell Bio-Medical v. Cin-Bad, Inc., 864 F.2d 1253, 1259 (5th Cir. 1989) (holding that "a ruling on the likelihood of confusion under the Lanham Act controls an unfair competition claim under state law); Thompson v. Thompson Air Conditioning & Heating, Inc., 884 S.W.2d 555, 558 (Tex. App. 1994) (stating that a plaintiff must show a likelihood of confusion between marks to sustain an action for common law infringement); Horseshoe Bay

<u>Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.</u>, 53 S.W.3d 799, 806 (Tex. App. 2001) (stating that the likelihood of confusion analysis is the same under both state and federal law).

**A.    Likelihood of Confusion Standard**

Whether or not a likelihood of confusion exists is a question of fact.  <u>Blue Bell Bio-Medical v. Cin-Bad, Inc.</u>, 864 F.2d 1253, 1259 (5th Cir. 1989); <u>Amstar Corp. v. Domino's Pizza, Inc.</u>, 615 F.2d 252, 258 (5th Cir. 1980).  In determining whether a likelihood of confusion exists, courts rely on several factors, including:

(1)  the type/strength of the mark allegedly infringed;

(2)  the similarity between the two marks;

(3)  the similarity of the products or services;

(4)  the identity of the retail outlets and purchasers;

(5)  the identity of the advertising media used;

(6)  the defendant's intent; and

(7)  any evidence of actual confusion.

<u>Westchester Media v. PRL USA Holdings, Inc.</u>, 214 F.3d 658, 664 (5th Cir. 2000).  In addition to the seven factors listed above, the trier of fact is "also free to consider other relevant factors." <u>Id</u>. (citing <u>Conan Properties, Inc. v. Conans Pizza, Inc.</u>, 752 F.2d 145, 149 (5th Cir. 1985)).  "No single factor is dispositive," and affirmative findings on even a majority of factors are not required to find a likelihood of confusion.  <u>Id</u>.; <u>Elvis Presley Enters., Inc. v. Capece</u>, 141 F.3d 188, 194 (5th Cir. 1998).  Each of the

individual factors (or "digits") making up the likelihood of confusion test are also questions of fact.  See, e.g., Union Nat. Bank of Texas, Laredo v. Union Nat. Bank of Texas, Austin, 909 F.2d 839, 846 (5th Cir. 1990) (stating, for example, that the "strength of the mark" factor is a question of fact).

**B.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  In conducting the summary judgment inquiry, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Willis v. Roche Biomedical Laboratories, Inc., 61 F.3d 313, 315 (5th Cir. 1995).  Summary judgment is not appropriate unless, viewing all the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." Byrd v. Roadway Exp., Inc., 687 F.2d

85, 87 (5th Cir. 1982); see also Aubrey v. School Bd. of Lafayette Parish, 92 F.3d 316, 318 (5th Cir. 1996) (stating that a court should not "weigh the evidence, assess its probative value, or resolve any factual disputes").

The Magistrate Judge correctly noted that summary judgment may be appropriate in a trademark case, just as in any other kind of case. See, e.g., King v. Ames, 179 F.3d 370, 373 (5th Cir. 1999). There are cases within the Fifth Circuit, however, which strongly caution against granting summary judgment on the fact-intensive issue of the likelihood of confusion. See Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 226 (5th Cir. 1995) (stating that summary judgment was not appropriate where the critical issues, the strength of the mark and the likelihood of confusion, were both questions of fact); Marathon Mfg. Co. v. Enerlite Prods. Corp., 767 F.2d 214, 217 (5th Cir. 1985) (stating that, although the parties filed cross-motions for summary judgment on the issue of the likelihood of confusion, granting summary judgment was improper). Similarly, other Circuits have looked with disfavor on deciding the "inherently factual" question of likelihood of confusion at the summary judgment stage. See, e.g., Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252 (9th Cir. 2001) (stating that "trial courts disfavor deciding trademark cases in summary judgments because the ultimate issue is so inherently factual . . . [and] the question of likelihood of

-5-

confusion is routinely submitted for jury determination");
Anheuser-Busch, Inc. v. L. & L. Wings, Inc., 962 F.2d 316, 318 (4th
Cir. 1992)(stating that "likelihood of confusion . . . has long
been recognized to be a matter of varying human reactions to
situations incapable of exact appraisement"); Warner Bros. Inc. v.
American Broadcasting Companies, Inc., 720 F.2d 231, 246 (2d Cir.
1983)(stating that "likelihood of confusion is frequently a fairly
disputed issue of fact on which reasonable minds may differ").
Taken together, these cases reflect a rule that summary judgment on
the issue of the "likelihood of confusion" should, at the very
least, be approached with the utmost caution.

###    C.    Genuine Issues of Material Fact

The question before this Court, therefore, is whether there is
a genuine issue regarding the likelihood of confusion between
Plaintiff's and Defendants' marks.  The Court cannot weigh the
evidence on any individual factor or on the ultimate issue of the
likelihood of confusion.  The Court cannot be influenced by its
belief that one party will prevail at trial.  All this Court may do
is ask whether any reasonable jury could find a likelihood of
confusion based on the facts on record.  This analysis must begin
by looking at certain of the likelihood of confusion factors.

At the outset, it is important to note that this Court agrees
with the Magistrate's conclusion that Plaintiff probably has not
presented sufficient evidence for a jury to find in his favor with

respect to some of the confusion factors. For example, it seems clear enough that Plaintiff has no evidence of the Defendant's bad intent[1], nor does Plaintiff have sufficient evidence that the companies have similar purchasers or use substantially similar advertising media. The Magistrate was probably correct in holding that no reasonable jury could find for Plaintiff with respect to these factors. Despite these weaknesses in Plaintiff's case, however, Plaintiff still has enough evidence on the other factors (albeit barely enough) to reach the jury. This Court will analyze those factors below.

### 1. Strength of the Mark

The first factor in the likelihood of confusion analysis, and the factor that seemed to play the greatest role in the Magistrate's recommendation, is the strength of Plaintiff's mark. The Magistrate started his analysis on this factor by stating that the "New Century Financial" mark, taken by itself, is a "fairly strong arbitrary mark." Normally, arbitrary marks "are entitled to trademark protection because they are inherently distinctive--they serve to identify a particular source of a product." Igloo-

---

[1] Whereas a defendant's bad faith is strong evidence of a likelihood of confusion, Sunbeam Prods., Inc. v. West Bend Co., 123 F.3d 246, 258 (5th Cir. 1997), the absence of bad faith is irrelevant to the likelihood of confusion analysis. See, e.g., Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 597-8 (5th Cir. 1985). Therefore, as Plaintiff correctly notes, the lack of evidence of bad faith cannot be counted against Plaintiff in the likelihood of confusion analysis.

Products Corp. v. Brantex, Inc., 202 F.3d 814, 816 (5th Cir. 2000).

The Magistrate concluded, however, that Plaintiff's "New Century

Financial" mark was actually very weak and entitled to far less

protection because the words "New Century" are extensively used by

third-parties.     (Memorandum & Report ("M&R") at p. 21-2, 25.)

"Third-party uses," as they are called, are relevant in determining

the strength of a mark because they tend to show that the mark has

been diluted in marketplace.     See Oreck Corp. v. U.S. Floor

Systems, Inc., 803 F.2d 166, 170 (5th Cir. 1986).     When a mark is

diluted, it becomes a less effective vehicle for signifying the

exact origin of products or services.     Therefore, a defendant's use

of a diluted mark is less likely to cause confusion among the

consuming public.     See Id.; Sun Banks of Florida, Inc. v. Sun Fed.

Sav & Loan Ass'n, 651 F.2d 311, 316-17 (5th Cir. 1981); Turner v.

HMH Pub. Co., 380 F.2d 224, 228 n.2 (5th Cir. 1967).

The Magistrate based his conclusion that Plaintiff's mark had

been extensively diluted on a summary, provided by Defendants,

outlining over 1700 third-party uses of "New Century."     This

summary listed third-party uses of "New Century" in a wide array of

contexts across the nation, including uses in: 1) registered

businesses; 2) trademark applications at the USPTO; 3) internet

domain names; and 4) uses at common law.     (M&R at 25-6.)     These

third-party uses covered an enormous range of products, services,

and business-types, including everything from "New Century

Perfumes" to "New Century Ford."  From this list of third-party uses, Defendants argued that the Court must find, as a matter of law, that the "New Century" mark has been diluted to the point that it deserves almost no protection.  The Magistrate agreed.

Plaintiff does not dispute that other businesses and organizations widely use the words "New Century."  Nevertheless, Plaintiff raises a bevy of other objections to the Magistrate's consideration of Defendants' third-party evidence.  In particular, Plaintiff contends that this evidence is too broad in scope to be relevant at all.  Plaintiff organizes its objections to the evidence's over-breadth into three main categories.  This Court will briefly outline each objection in turn.  First, Plaintiff claims the evidence of third-party use is too broad because it includes mere *registrations* and *listings* of the name "New Century," and is not limited to evidence of *actual uses* of the name in commerce.  Plaintiff contends that "mere registrations" the name "New Century" are irrelevant in determining the strength of the mark.  In support of this objection, Plaintiff relies on <u>Turner v. HMH Pub. Co.</u>, 380 F.2d 224 (5th Cir. 1967) which stated that:

> We will not assume any knowledge on the part of the purchasing public by mere registrations in the Patent Office, nor will we assume that the marks are in continuing use, so as to have any effect on the mind of the purchasing public merely because they had been so registered.

<u>Id</u>. at 228 n.2.  According to Plaintiff, mere registrations of the "New Century" mark do not show *actual use in the marketplace* and

only such use is relevant to determining the strength of the mark. Plaintiff cites a number of other cases in support of this proposition. See Waples-Platter Co. v. General Foods Corp., 439 F.Supp. 551, 577 (N.D. Tex. 1977) (stating that "[t]he key consideration is actual use"); see also Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1173-74 (2nd Cir. 1976). Defendants, on the other hand, contend that evidence of registrations and applications are relevant and have been considered by the Fifth Circuit in several cases, including Sun Banks of Florida, Inc. v. Sun Fed. Sav & Loan Ass'n, 651 F.2d 311 (5th Cir. 1981) and Amstar Corporation v. Domino's Pizza, Inc., 615 F.2d 252 (5th Cir. 1980). The Magistrate agreed with Defendants.

Second, Plaintiff also objects to the evidence of third-party uses on the grounds that it includes uses of just the "New Century" mark and is not limited to uses of Plaintiff's full mark: "New Century Financial." Plaintiff argues that the Magistrate should have considered only those third-party uses of Plaintiff's full mark, "New Century Financial." Plaintiff is not able to cite to any cases binding on this Court which directly stand for this proposition. Plaintiff is, however, able to identify several cases from district courts and other circuits that support its claim. See Waples-Platter, 439 F.Supp. at 579 (commenting on the decreased usefulness of third party uses containing only a portion of plaintiff's mark); Safeway Stores, Inc. v. Safeway Drugs, Inc.,

675 F.2d 1160, 1165 (11th Cir. 1982) (stating that a "consideration relevant in determining the significance of third party use is the entire name a third party uses").

Third and finally, Plaintiff objects that the evidence of third-party uses is too broad because it contains uses of "New Century" outside of the financial industry and outside the Plaintiff's marketplace (i.e., Texas). The Magistrate considered all third-party uses, including those outside the financial industry and outside Texas, believing that such uses were clearly relevant under Sun Banks and Amstar. Plaintiff contends, however, that uses must be much more limited to be relevant and cites several district court cases to back up its claim. See American Rice, Inc. v. Arkansas Rice Grower's Co-op Assoc., 532 F.Supp. 1376, 1386 n.5 (S.D. Tex. 1982) (considering mostly products sold in Saudi Arabia in determining the strength of a mark used primarily in Saudi Arabia); Express Funding, Inc. v. Express Mortgage, Inc., 894 F.Supp. 1095, 1100-1 (E.D. Mich. 1995) (considering the scope and geographic areas of other marks in determining their relevance to the issue of mark strength); see also Quantum Fitness Corp. v. Quantum Lifestyle Centers, LLC, 83 F.Supp.2d 810 (S.D. Tex. 1999).

In sum, Plaintiff argues that only those third-party uses that are tailored in time, place, and scope are *ever* relevant to the issue of mark strength. Plaintiff argues that the Magistrate erred

in considering *any* third-party uses that were not so tailored or limited. Plaintiff claims that, had the Magistrate correctly limited his inquiry, he would have found that, of the 1700 alleged third-party uses, "only 75 are even arguably in use . . . 27 [of which] are for services in Plaintiff's field." (Pl.'s Objections to Recommendations ("Objections") at 29.) Furthermore, Plaintiff claims that only 5 of those 27 contain the phrase "New Century Financial" and none have been shown to do business in Texas. (Objections at 29.)

This Court finds Plaintiff's claim, that all but the most carefully limited third-party uses are irrelevant, to be wholly without merit. Plaintiff's claim might be legally sound in other Circuits. See, e.g., Olde Tyme Foods, Inc. v. Roundy's, Inc., 961 F.2d 200, 203-4 (Fed. Cir. 1992) (stating that "[a]s to strength of a mark . . . [third-party] registration evidence may not be given any weight . . . [because they are] not evidence of what happens in the market place"). It is not, however, legally sound in this Circuit. As the Magistrate correctly noted, such a claim is directly foreclosed by the case law. In Amstar, for example, the Fifth Circuit clearly considered evidence relating to third-party uses outside the Plaintiff's field and place of business. See Id. 615 F.2d at 259 (considering third-party uses of plaintiff's mark on products ranging from "chrome-tanned leather" to "ladies' hosiery"). Similarly, in Sub Banks, the court looked at third-

party uses in the form of registrations with the state and federal governments.  See Id. 651 F.2d at 316 (considering "over 4400 businesses registered with the Florida Secretary of State . . . [and] other businesses across the country having federally registered trade and service marks").  These cases plainly show the error in Plaintiff's attempt to limit this Court's consideration to only those third-party uses that are identical in location and scope to Plaintiff's use.  The Magistrate, therefore, did not err in considering the full breadth of third-party uses proffered by Defendants.

That, however, is not the end of the inquiry.  While Sun Banks and Amstar allow a fact-finder to consider a broad array of third-party uses, those cases do not instruct courts to take over the jury's role of determining how other considerations might affect the *probative value* of the proffered third-party uses.[2]  For example, the extent to which third-party uses dilute the strength of Plaintiff's mark will depend on a variety of factors, including those highlighted by Plaintiff.  As one district court has noted: "[t]here is no general rule to be slavishly followed.  Rather, the importance of third-person use adoption is to be considered on a

_____

[2] Even Sun Banks, for example, seems to acknowledge that some third-party uses are more useful than others.  For example, the Sun Banks court, while considering a wide array of third-party uses, seemed particularly impressed by those uses that were similar to the plaintiff's use.  See Sun Banks, 651 F.2d at 316 & n.8, 10.

case-by-case examination of the facts." Waples-Platter Co. v. General Foods Corp., 439 F.Supp. 551, 577 (N.D. Tex. 1977) (citing Metropolitan Life Ins. Co. v. Metropolitan Ins. Co., 277 F.2d 896, 900 (7th Cir. 1960) and Arrow Distilleries, Inc. v. Globe Brewing Co., 117 F.2d 347, 351 (4th Cir. 1941)); see also Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1173 (2d Cir. 1976) (stating that "[t]he significance of third-party trademarks depends wholly upon their usage"); Menendez v. Holt, 128 U.S. 514, 521 (1888) (considering the "casual" nature of a third-party use of a trademark as well as the fact that such use was discontinued). While it is impossible to exhaustively list the factors that affect the probative value of third-party uses, a fact-finder generally might consider: 1) how many are actual uses in commerce as opposed to registrations or listings; 2) the geographic location of such uses; 3) whether the third-parties use the mark in a line of business similar to plaintiff's; 4) the size of the third-party business or organization using the mark; 5) whether the uses have been abandoned or are active; 6) the extent to which the third party promotes or advertises their mark; and 7) the extent to which consumers recognize or are exposed to the third-party marks.

Common sense supports the conclusion that such factors might affect the relevance of third-party use evidence. Obviously, if a significant number of banks and lending institutions in Texas currently use the name "New Century Financial," then there is a

strong inference that Plaintiff's mark is no longer an effective vehicle for signifying to its customers the exact origin of its services. On the other hand, the existence of a "New Century Diamond" in Aiea, Hawaii, probably does little to dilute the identifying power of Plaintiff's mark for financial services here in Texas. Such considerations are for the fact-finder to weigh upon reviewing the evidence and the Magistrate erred in utterly discounting these considerations on summary judgement.

This Court, like the Magistrate, is strongly impressed by Defendants' extensive evidence of third-party uses. This Court seriously doubts that a jury would find that Plaintiff's mark is strong and undiluted. To the contrary, this Court believes that a jury, upon hearing the evidence, will come to the same conclusion as the Magistrate. Nevertheless, this Court cannot say as a matter of law that a reasonable jury *must* agree with the Magistrate that Plaintiff's mark was diluted to the point that it was "very weak" and deserved "very limited" protection. (M&R at 22, 25.) Viewing the evidence in the light most favorable to the Plaintiff, a jury could find that only a small fraction of the 1700 third-party uses are of such a nature that they meaningfully dilute the strength of Plaintiff's mark. The record is devoid of evidence compelling the conclusion that more than a handful of the third-party uses are actually and currently being used commerce. Similarly, even a casual inspection of Defendants' list of third-party uses reveals

that the vast majority of the uses are for products or services outside of the financial field and outside of Plaintiff's place of business. Finally, there is no evidence demonstrating the extent to which these third-party uses are actively promoted and no evidence of the extent to which consumers are exposed to the third-party uses at all. Without such evidence, this Court cannot conclude that every reasonable jury would find Plaintiff's mark to be very weak and entitled to little protection.

### 2. Actual Confusion

The next likelihood of confusion factor is whether there is evidence of actual confusion. It is widely acknowledged that evidence of actual confusion is the best evidence of a likelihood of confusion. _Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc._, 659 F.2d 695, 704 (5th Cir. 1981). It is not, however, _necessary_ to show a likelihood of confusion. _World Carpets, Inc. v. Dick Littrell's New World Carpets_, 438 F.2d 482, 489 (5th Cir. 1971) (stating that "it is not necessary to show actual confusion. One merely has to show that the likelihood of confusion exists"); 2 J. Thomas McCarthy, Trademarks and Unfair Competition, § 23:63 (4th ed. 1999) (stating that "evidence of actual confusion is not necessary to prove a likelihood or probability of confusion," a likelihood of confusion can be found by "inspection of the conflicting marks and their manner of use"). The Fifth Circuit has noted that even "very little proof of actual confusion" could be

enough to prove a likelihood of confusion.  World Carpets,  438 F.2d at 489.  Even where "very little proof" of actual confusion is offered, "an almost overwhelming amount of proof [is] necessary to refute such proof."  Id.

The Magistrate seemed to define the term "actual confusion" to mean situations "where consumers confuse the defendant with the plaintiff such that they purchase services from the defendant instead of from the plaintiff." (M&R at 33.)  The Magistrate used this definition to conclude that several of Plaintiff's instances of actual confusion were not worthy of consideration.  This Court, however, does not believe that actual confusion can be defined so narrowly.  Rather, the term "actual confusion" necessarily refers to *any and all* evidence of actual confusion.  The Fifth Circuit has stated that "[i]n no case have we sanctioned total disregard of evidence of actual confusion; there is simply no precedent for such a view, regardless of the identity of the person confused."  Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 597 (5th Cir. 1985).  Thus, a plaintiff "need not prove confusion on the part of actual customers,"  Marathon Mfg. Co. v. Enerlite Products Corp., 767 F.2d 214, 221 (5th Cir. 1985), because "[e]vidence of confusion in others permits the inference of confusion of purchasers."  Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc., 41 F.3d 223, 228 n.11 (5th Cir. 1995); see also World Carpets, 438 F.2d at 439.

Of course, as the Magistrate correctly noted, some instances of actual confusion are more powerful than others. For example, proof of confusion in consumers is more probative than proof of confusion in others. See Sun Banks, 651 F.2d at 319. Likewise, a fact-finder must consider any "countervailing circumstances" that lessen the impact of the actual confusion. Id. Once again, however, the Sun Banks case cannot be read as giving district courts *carte blanche* authority to usurp the fact-finder's role on summary judgment. The Sun Banks case did not come before the court on appeal from an order for summary judgment or a directed verdict. Rather, the Sun Banks case came on appeal after a bench trial, in which the district court acted as the fact-finder on the likelihood of confusion. Id. at 313.[3] While the district courts often act as fact-finders in trademark cases, a court cannot "jump the gun" and take over that role on summary judgment where the non-movant is supposed to enjoy significant procedural protections. Therefore, while Sun Banks instructs fact-finders to consider mitigating circumstances in evaluating actual confusion, it does not instruct courts to wholly disregard actual confusion because of countervailing circumstances, unless those circumstances are *so compelling* that no reasonable jury could find evidence of

---

[3] The other cases on which the Magistrate heavily relied, Amstar Co. v. Domino's Pizza, Inc., and Blue Bell Bio-Medical v. Cin-Bad, Inc., also appear to have been appealed after a bench trial and thus cannot be read as giving district courts authority to weigh the evidence of actual confusion on summary judgment.

confusion.

Viewing all evidence in the light most favorable to the Plaintiff, this Court finds that Plaintiff does have some evidence of actual confusion. Plaintiff has evidence that it received a number of telephone calls[4] in which individuals were seeking the Defendants or services offered by the Defendants. The Magistrate discounted such calls on the grounds that:

> Actual confusion occurs when consumers confuse the defendant with the plaintiff such that they purchase services from the defendant instead of from the plaintiff. Here, the callers all inquired about mortgage services. Plaintiff does not provide mortgage services. Therefore, the callers could not have confusingly purchased defendants' services instead of plaintiff's. In fact, plaintiff was able to identify and correct the callers' mistakes immediately. The impact of any actual confusion that took place was therefore greatly diminished.

(M&R at 34-5.) The Magistrate's definition of actual confusion here is too limited. This Court agrees that it is unlikely that a customer could ever mistakenly purchase Defendants' mortgage services instead of Plaintiff's "factoring" services. There is, however, another inference to be drawn from the misdirected phone calls. The line of reasoning would go something like this: 1) if people mistakenly called Plaintiff looking for the Defendants, then it is likely that people also mistakenly called Defendants looking

---

[4] The Magistrate found that Plaintiff's received about 2-3 misdirected phone calls per month (M&R at 34-5), while Plaintiff contends the number was much greater, approximately "several misdirected phone calls per week." (Objections at 36.) Either way, this Court's conclusion would be the same.

for Plaintiff; 2) if people called Defendants looking for Plaintiff, they would likely be told that Defendant does not offer the services they are seeking; 3) if told that Defendant does not offer the services they are seeking, they are likely to take there business elsewhere; and 4) thus Plaintiff, who has only about 43 current customers, would be harmed by the confusing similarity. While this is not the strongest inference in the world, it is one that the fact-finder could permissibly make.

Similar inferences could be drawn from Plaintiff's other purported evidence of confusion. Plaintiff presented at least four instances of confusion on the part of friends and acquaintances of Plaintiff's president. Similarly, Plaintiff also presented evidence of a few clients who, upon receiving a mail advertisement from Defendant, thought that Plaintiff and Defendant were the same company. Finally, Plaintiff has evidence of a website using Plaintiff's logo in connection with services performed for Defendant and evidence of a job applicant mistakenly being given information about Defendant prior to interviewing with the Plaintiff. A reasonable trier-of-fact, considering this evidence, could infer harmful confusion in potential customers from these instances of relatively harmless, easily-corrected confusion in non-customers. While the Magistrate is probably correct that a jury would find Plaintiff's instances of actual confusion unpersuasive because of the ease with which they were corrected,

this Court cannot say that a jury would be compelled to do so. Therefore, Plaintiff's evidence of actual confusion must be respected in the summary judgment analysis.

### 3. Similarity of the Marks

The final factor this Court will consider is the similarity of the marks. Plaintiff's and Defendants' respective marks appear as follows:

PLAINTIFF'S MARK:                    DEFENDANTS' MARKS:

     



As has been frequently noted, "similarity of design stems from the overall impression conveyed by the mark and not a dissection of individual features." Sun-Fun Products, Inc. v. Suntan Research & Development Inc., 656 F.2d 186, 189 (5th Cir. 1981); Sun Banks, 651 F.2d at 318-19 ("similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features"); Armstrong Cork Co. v. World

<u>Carpets, Inc.</u>, 597 F.2d 496, 502 (5th Cir. 1979) (stating that "it is the overall impression that counts").  "Even if prospective purchasers recognize that the two designations are distinct, confusion may result if purchasers are likely to assume that the similarities in the [marks] indicate a *connection* between the two users."  <u>Elvis Presley</u>, 141 F.3d at 201 (emphasis supplied). Rather, "the relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated."  <u>Id</u>.

The Magistrate correctly cited this rule and ultimately decided that no reasonable jury could find that the marks were similar.  The Magistrate relied on the fact that the marks were "clearly distinct," because, among other things: 1) Defendants' marks used large and small capital letters, while Plaintiff's mark used only large capital letters; 2) Plaintiff places the entire trademark on one line, while Defendants divided their marks into two separate lines; 3) the typefaces are different; and 4) the graphic logos accompanying the marks are very different, Defendants using a stylized "N" within a circle and Plaintiffs using a triangle with a colored arc running through it.  (M&R at 40-2.) Plaintiff objects to this line of analysis, claiming that the Magistrate impermissibly "dissected" the marks and did not properly consider the "overall impression."  Had the Magistrate analyzed the

marks properly, the Plaintiff reasons, he would have concluded that there was a genuine issue of fact with respect to mark similarity.

This Court is sympathetic to the Magistrate's plight. It is easy to recite the rule that a court must compare the "overall impression" created by the marks, but it is far more difficult to analyze mark similarity without focusing on specific, individual features and differences. Considering this difficulty, this Court thinks the Plaintiff unfairly accuses the Magistrate of dissecting the marks. Rather, the Magistrate attempted to convey his "overall impression" of the marks by articulating what he believed to be numerous, specific dissimilarities between Plaintiff's and Defendant's marks. Nevertheless, upon review of the Magistrate's analysis, this Court is forced to conclude that the Magistrate improperly discounted important similarities between the marks. The most obvious similarity between the marks, of course, is the fact that Plaintiff's and Defendants' marks all display the words "New Century" as a prominent feature. The words "New Century" are written in nearly-identical fonts and appear in all capital letters. The words "New Century" are also similarly-situated within the overall scheme of the marks. "New Century" appears prominently at the top of each mark, with less-prominent language appearing directly below. Directly to the left of the words "New Century," on each mark appears a graphic logo. The logos each feature a simple, solid-colored, geometric shape with a different-

colored, stylized stroke running through the middle.  Overall, both Plaintiff's and Defendants' marks utilize similar formats and have a similar, two-toned appearance.  Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that the marks are confusingly similar, especially where the logos are seldom featured "side by side . . . and the consumer must rely on memory rather than a visual comparison."  Sun-Fun, 656 F.2d at 189, 192.

Once again, however, this Court feels compelled to note that it reaches this conclusion because of the posture of the case and the requirement that every inference be drawn in favor of the Plaintiff.  As the Sun-Fun court stated:

> There are, of course, identifiable differences between the marks . . . [and a] jury might well conclude that the marks are too dissimilar to justify a finding of infringement.  We merely hold that it was improper for the district judge to weigh these similarities and differences instead of the jury.

Id. at 190 (on appeal after a directed verdict for the defendant).

Therefore, this Court finds that Plaintiff has presented sufficient evidence to reach the jury on the issue of the likelihood of confusion.[5]  Under such circumstances, summary

---

[5] As such, Plaintiff's claims for federal and state trademark infringement survive summary judgment.  Similarly, although Defendants did not brief this issue in their motion, summary judgment also seems inappropriate on Plaintiff's claim under the Texas Anti-Dilution Statute, Texas Bus. & Com. Code § 16.29.  This statute offers "broader protection for marks than federal law" because it applies "regardless of whether there is competition between the parties or likelihood of confusion as to

judgment will not be appropriate unless Defendant is entitled to judgment as a matter of law on its defense of laches.  It is to that defense that this Court now turns.

**D.    Laches**

In addition to finding no genuine issue of material fact with respect to the likelihood of confusion, the Magistrate Judge also found that summary judgment was appropriate on the separate and independent ground that Plaintiff's claims should be barred by the doctrine of laches.  Laches is an affirmative defense based on a plaintiff's inexcusable delay that results in prejudice to the defendant.  Conan Properties, Inc. v. Conans Pizza, Inc., 752 F.2d 145, 153 (5th Cir. 1985).  A defense of laches has three elements: "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; [and] (3) that undue prejudice resulted from the delay."  Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 205 (5th Cir. 1998).  The period for laches begins when the plaintiff knew or should have known of the infringement.  Id.;

---

the source of goods or services."  Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp. 1513, 1563-64 (S.D. Tex. 1996); see also Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1081 (5th Cir. 1997).  If Plaintiff owns a distinctive mark, "it is enough for dilution that the defendant has made significant use of a very similar mark."  Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp., 53 S.W.3d 799, 812 (Tex. App.--Austin 2001). As discussed previously, a reasonable jury could find that Plaintiff's mark is distinctive despite Defendants' evidence of third-party uses.  Similarly, a reasonable jury could also find that Plaintiff's and Defendants' marks are similar.  Under these circumstances, summary judgment is also inappropriate on the dilution claim.

Armco, Inc. v. Armco Burglar Alarm Co., Inc., 693 F.2d 1155, 1160
(5th Cir. 1982). "Laches is not *established* by undue delay and
prejudice. Those factors merely lay the foundation for the trial
court's exercise of discretion." Derrick Mfg. Corp. v.
Southwestern Wire Cloth, Inc., 934 F.Supp. 796, 810 (S.D. Tex.
1996) (quoting Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.,
60 F.3d 770, 773 (Fed. Cir. 1995))(emphasis in original). The
discretion the district court enjoys in deciding the issue of
laches is "considerable." National Ass'n of Gov't Employees v.
City Public Service Bd., 40 F.3d 698, 707 (5th Cir. 1994).
Importantly, when laches is addressed on summary judgment, the
court must comply with the requirements of Rule 56(c). While the
"district court [has] discretion to grant laches on motion for
summary judgment, it [does] not have discretion to circumvent the
requirements of Rule 56(c) by resolving genuinely disputed issues
of fact material to laches." Id. at 708.

The laches inquiry is a factual one, in which the trial court
analyzes the combined effect of the Plaintiff's delay and the
prejudice resulting to the Defendants. Armco, 693 F.2d at 1161
(stating that "LACHES = DELAY x PREJUDICE"); see also Terry v.
Prairie Oil & Gas Co., 83 F.2d 843, 846 (5th Cir. 1936) (stating
that laches "always presents a question of fact"). "[M]ere passage
of time . . . [even] a considerable amount of time . . . will not
automatically perfect a claim for such an equitable bar." American

_Marine Corp. v. Citizens Cas. Co. of New York_, 447 F.2d 1328, 1329 (5th Cir. 1971). "[L]aches is much more than time," _Id_., and "mere neglect to challenge action is not sufficient to establish laches in any case." _Environmental Defense Fund, Inc. v. Alexander_, 614 F.2d 474, 479 (5th Cir. 1980). In the trademark context, six years of delay do not necessarily constitute laches as a matter of law. _See_, _e.g._, _Armco_, 693 F.2d at 1161. (district court had discretion to determine whether six-year delay constituted laches); _Sheila's Shine Products, Inc. v. Sheila Shine, Inc._, 486 F.2d 114, 125-6 (5th Cir. 1973) (holding that "the six year delay" between defendants "entry" into the market and plaintiff's "attempt to exercise control" was not sufficient to constitute estoppel).

In this case, the Court declines to exercise its discretion and find that Plaintiff's claims are barred by laches. To begin with, a finding of laches seems inappropriate on summary judgment where the parties contest several key facts, particularly the facts relevant to when Plaintiff "should have known" of the Defendants' infringing use. The Magistrate made a blanket statement that Plaintiff should have been aware of all Defendants' infringing marks by 1999. (M&R at 54.) Certainly, there is evidence to that effect, such as the phone calls Plaintiff received in the late 1990s from people seeking mortgages and the fact that Defendant's website was up and running as early as 1998. Plaintiff, however,

also has evidence that it was not aware of the full extent of the problem until much later, around 2003 or 2004, when Plaintiff's president was first referred to Defendant's website.[6] (Ex. 1 at ¶¶ 12-17). Given that Plaintiff's evidence is to be believed at the summary judgment stage, this Court cannot conclude that there has been unreasonable delay as a matter of law.

Furthermore, there is also insufficient evidence at this point to compel a finding of undue prejudice. In order to show prejudice, the defendant generally must show that "the delay has caused a disadvantage in asserting and establishing a claimed right or defense." Gov't Employees, 40 F.3d at 710 (quoting In re Bohart, 743 F.2d 313, 327 (5th Cir. 1984)). This prejudice standard is based on the fact that laches, as a doctrine, is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Id. (quoting Order of R.R. Telegraphers v. Ry. Express Agency, Inc., 321 U.S. 342, 348-49 (1944)). "Prejudice does not arise merely because one loses what otherwise he would have kept." Baylor Univ. Med. Ctr. v. Heckler, 758 F.2d 1052, 1058 (5th Cir. 1985).

---

[6] Although Plaintiff agrees that it became aware of a New Century Mortgage doing business in El Paso sometime in 1999, this fact alone is not enough to compel a finding of unreasonable delay.

In this case, the Magistrate concluded that there was prejudice as a matter of law based on the $160 million dollars it has spent advertising its services under the New Century marks. Certainly this could be persuasive evidence of prejudice. Yet the Court is not convinced that this evidence alone is enough to bar Plaintiff from all relief, especially where there is no evidence that the alleged delay has impaired Defendants' ability to establish their defense. There is no evidence or witnesses have been lost. There is no evidence that Defendants are at any disadvantage in defending this lawsuit because of the passage of a few years. Under such circumstances, the equities favor allowing Plaintiff to go forward with its claim. Defendants' expenses in promoting their allegedly-infringing marks are not alone sufficient to justify preventing Plaintiff from establishing *its* rights in court. Therefore, a finding of laches is not appropriate.

## IV. Conclusion

For the reasons discussed above, this Court DECLINES TO ADOPT the Magistrate Judge's Recommendation. Defendants's Motion for Summary Judgment is DENIED.

SIGNED and ENTERED this 4th day of October, 2005.

_____

Janis Graham Jack
United States District Judge