IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| NEW CENTURY FINANCIAL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. C-04-437 |
| NEW CENTURY FINANCIAL CORPORATION, ET AL., | § § § § | |
| Defendants. | § § | |

**ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY**

On this day came on to be considered Defendants' Motion to Exclude Testimony of Plaintiff's Designated Expert Michael Hughes (d.e. 74). After consideration of all evidence presented as well as the argument of counsel, this Court GRANTS Defendants' motion.

**I.    Jurisdiction**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**II.   Factual and Procedural Background**

Plaintiff New Century Financial, Inc. asserts claims for federal and state trademark infringement. As indicated in the Court's Order Denying Defendants' Motion for Summary Judgment, "[t]he crucial issue in this case is whether there is a 'likelihood of confusion' between Plaintiff's 'New Century Financial' [NCF] trademark and Defendants' 'New Century Financial Corporation' [NCFC] and 'New Century Mortgage' [NCM] trademarks and names." (Order at 2, Oct. 4, 2005.)

On April 25, 2005, Plaintiff filed its Expert Designation and Report,[1] designating Michael Hughes as the testifying expert on the issues of likelihood of confusion and damages. On May 11, 2005, Defendants filed a Responsive Expert Designation and Report, designating Gilbert De Los Santos, Ph.D. as the responsive expert. In Santos's report, he stated that "Mr. Hughes' premise, methodology, assumptions, information, and conclusions are grossly flawed in multiple respects and, are therefore, unreliable." (Santos's Expert Report at 1.) Defendants also motioned the Court to exclude expert testimony of Mr. Hughes on May 31, 2005. On June 30, 2005, Plaintiff filed a Memorandum in Opposition, stating that "Michael Hughes has twenty-seven years of practical experience in the marketing and advertising field; therefore, he is highly qualified to give opinions on the marketing and advertising concepts that relate to the likelihood of confusion, as well as the ultimate issues of likelihood of confusion, dilution and damages." (Pl.'s Mem. Opp'n at 2.)

Pursuant to Defendants' request, the Court conducted a Daubert hearing to consider Defendants' Motion to Exclude Testimony of Plaintiff's Designated Expert Michael Hughes on November 21, 2005.

### III. Discussion

The proponent of expert testimony has the burden of showing that the expert testimony is reliable. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir.1998) (en banc). The trial court is charged with the responsibility of acting as a gatekeeper to exclude unreliable expert

---

[1] Mr. Hughes' expert report, titled "Marketing Plan," appears to be a proposed advertising campaign aimed "to correct and repair the damage done to the NCF [plaintiff] brand caused by consumer confusion and a deterioration in mindshare within the marketplace as a result of the Defendants' conduct." (Marketing Plan at 1.) Mr. Hughes proposed "a targeted, multi-faceted, multi-year campaign to begin the vital brand rebuilding process for NCF [the plaintiff]." (Id. at 8.) The cost of the proposed campaign is $8,443,612.

testimony, and it must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93 (1993). The trial court's gatekeeper function applies to all expert testimony, not just testimony based in science. Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 372 (5th Cir. 2000) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)). The trial court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Seatrax, Inc., 200 F.3d at 372.

Rule 702 of Federal Rules of Evidence, as amended in 2000, affirms the trial court's role as a gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Additionally, the United States Supreme Court announced in Daubert several factors that a trial court should consider when exercising its gatekeeper function, including: (1) whether the technique in question has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in

the expert's field. Daubert, 509 U.S. at 593-94. The test of reliability "is flexible, and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a trial court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., 526 U.S. at 141.

Furthermore, under Rule 403 of Federal Rules of Evidence, the Court may exclude relevant evidence on grounds of prejudice, confusion or waste of time. Specifically, Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

In the trademark infringement context, the issue of whether a likelihood of confusion exists between Plaintiff's and Defendants' trademarks and names is a question of fact. Blue Bell Bio-Medical v. Cin-Bad, Inc., 864 F.2d 1253, 1259 (5th Cir. 1989); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258 (5th Cir. 1980). Courts have allowed the use of survey evidence and expert testimony to demonstrate a likelihood of confusion, however, the expert's testimony and the ultimate conclusion on the issue of confusion should be based on results from surveys and studies the expert has conducted. See Exxon Corp. v. Texas Motor Exch. of Houston, 628 F.2d 500, 506 (5th Cir. 1980); see also Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 118 (3d Cir. 2004); Ironclad, L.P. v. Poly-America, Inc., No. Civ. A. 3:98-cv-2600, 2000 WL 1400762, at *6-7 (N.D. Tex. July 28, 2000); Westchester Media Co. v. PRL USA Holdings, Inc., No. Civ. A. H-97-3278, 2001 WL 34109374, at *7 (S.D. Tex. Oct. 23, 2001). Also, a district court may exclude an expert's testimony if it is based on speculations designed to bolster a party's position. Guillory

v. Domtar Indus. Inc., 95 F.3d 1320, 1331 (5th Cir. 1996) (affirming district court's exclusion of expert testimony based on facts not in the record and speculation designed to bolster proponent's position).

Plaintiff designated Mr. Hughes as the testifying expert on the issue of confusion between Plaintiff's and Defendants' trademarks and names. The burden is therefore on Plaintiff to show that Mr. Hughes' testimony is reliable. Mr. Hughes' conclusion that a likelihood of confusion existed was drawn from facts he gathered through (1) reading the pleadings in the action, (2) talking to Plaintiff's attorney and the president of NCF (Plaintiff), (3) talking to a closing officer involved with the closing on Mr. Hughes' house, and (4) talking to a mortgage broker whose son was on the same baseball team as Mr. Hughes' son.

Mr. Hughes admitted at the Daubert hearing that based on information Plaintiff presented to him, he assumed the existence of confusion in the marketplace and did not conduct any independent survey, study or market research to confirm whether there was confusion. Additionally, Mr. Hughes conceded that he did not employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in [his] relevant field." See Seatrax, Inc., 200 F.3d at 372. Specifically, during the Daubert hearing, Defendants presented evidence that Mr. Hughes was previously hired by another company to work on a corrective advertising campaign. Mr. Hughes admitted that before he made a recommendation as to what should be done, he conducted a market research to determine what would be an effective campaign. Yet, Mr. Hughes did not conduct a similar market research in this case to determine whether confusion existed in the marketplace prior to presenting Plaintiff with the corrective advertising campaign. Although Mr. Hughes did speak to two people, a closing officer who just closed on Mr. Hughes' house and a mortgage broker whose

son was on the same baseball team as Mr. Hughes' son, such casual conversations did not constitute a market research, survey or study.

Under Rule 702, an expert's testimony must be based upon sufficient facts or data, must be the product of reliable principles and methods, and these principles and methods must be applied to the facts of the case. Fed. R. Evid. 702. Mr. Hughes' proffered expert testimony fails to meet any of the requirements. His conclusion was based primarily on facts supplied to him by Plaintiff's attorney and the president of NCF. Mr. Hughes did not gather any facts independently. He did not conduct an independent study or survey or research or analysis. His conclusion was not based on any reliable principles and methods, as none were employed by him to make his conclusion. He merely accepted as true Plaintiff's presentation that confusion existed in the marketplace, and proffered to testify to, not his conclusion, but Plaintiff's conclusion on the issue of confusion.

The proffered expert testimony also fails to meet any of the <u>Daubert</u> factors. First, Mr. Hughes' opinion that a likelihood of confusion existed between Plaintiff's and Defendants' trademarks and names was not derived from any technique that had been tested or that had been subjected to peer review or publication. In fact, Mr. Hughes' opinion was not based on any technique at all, but the mere acceptance of Plaintiff's assertion that confusion existed. Even assuming Mr. Hughes' two casual conversations could constitute a "technique" for the purpose of <u>Daubert</u> analysis, Plaintiff has not presented the Court with the error rate of the technique of having two casual conversations; Plaintiff has not shown the existence and maintenance of standards controlling the technique's operation; nor has Plaintiff presented any evidence that the technique used was generally accepted by the marketing or advertising community to determine the existence of a likelihood of confusion between trademarks and names. See <u>Daubert</u>, 509 U.S. at 593-94. The proffered expert testimony

has met none of the Daubert factors.

Based on Plaintiff's failure to satisfy requirements under both Rule 702 and Daubert, the Court finds Mr. Hughes' proffered testimony on the issue of likelihood of confusion unreliable, and it is therefore excluded.

Similarly, Mr. Hughes' proffered testimony on the issue of damages is equally unreliable. As total damages to correct the assumed confusion between Plaintiff's and Defendants' trademarks and names, Mr. Hughes proposed a $8 million corrective advertising campaign, all to be paid to himself. As Mr. Hughes did not know how much confusion existed in the marketplace and no independent study or survey was conducted, he conceded during the Daubert hearing that his opinion and conclusion as to damages were purely speculative and lacked factual foundation. It is well established that the Court should exclude an expert's testimony if the testimony is based on facts and speculations designed to bolster Plaintiff's position and that the testimony lacks factual foundation. Guillory, 95 F.3d at 1331. Mr. Hughes' testimony related to speculative damages is therefore excluded.

## IV.    Conclusion

Based on the reasons set forth above, the Court GRANTS Defendants' Motion to Exclude Testimony of Plaintiff's Designated Expert Michael Hughes as to both "likelihood of confusion" and damages.

SIGNED and ENTERED on the 29th day of November, 2005.

_____
Janis Graham Jack
United States District Judge